The action is dismissed at the plaintiff's costs.

Ross, P. J., concurs.                    *Action dismissed.*

HAMILTON, J., concurring. I concur in the conclusion reached in the foregoing opinion, for the additional reason that the title to the property sought to be partitioned is in the purchaser at the judicial sale, or his successors, which sale the plaintiff seeks to void.

The rule is that the title of a purchaser at a judicial sale cannot, as a general rule, be impeached in equity for errors or irregularities in the proceedings. *Stites* v. *Wiedner,* 35 Ohio St., 555.

If there were irregularities, there are no facts which would impeach the purchaser's title to the land, and, consequently, the plaintiff has no interest therein.

. VAN SICKLE, APPELLANT, *v.* WALPER, APPELLEE.

(Decided April 3, 1939.)

*Messrs. Miller & Hagerty,* for appellant.
*Messrs. Denman, Miller & Beatty,* for appellee.

LLOYD, J. On November 15, 1937, at about 6:30 p. m., it being dark, Ralph Van Sickle, a minor nineteen years of age, was injured by a Ford truck owned by John J. Walper, then being driven by him on Monroe street just west of the city limits of Toledo. Nearby, on Monroe street, were two gas stations, located directly opposite each other. On the premises of each were six 500-watt flood lights and other sign and pump lights. There was also a street intersection light near the place of the occurrence. To what extent they lighted the street at the scene of the occurrence is more or less in dispute.

As Walper was proceeding easterly on Monroe street, the glare of the headlights on an automobile proceeding westerly on Monroe street so blinded him that he did not see Van Sickle and a Mr. Halter, who were standing in Monroe street near the southerly curb thereof until within ''three or four feet on top of them,'' when it was too late to stop. Walper testified that ''the very bright lights blinded me,'' that otherwise the lights on his truck would have enabled him to see at least 200 feet ahead, that his truck ''was not running very fast'' and that he was driving his truck within 3 or 4 feet of the southerly curb of the street. There was no intervening traffic between him and Van Sickle and Halter.

The occasion of Van Sickle being in the street was that he had hit a Chow dog which was attempting to cross the street and, assuming that the dog belonged to one of the gas station operators, drove over to tell him about it. Thereupon Eisel, the station owner, went with Van Sickle to where the dog lay within 3 or 4 feet of the curb. Afraid to pick up the injured

dog with their hands, Eisel suggested getting a pole, but Halter, the other station owner, who had also gone to where the dog lay, suggested that Eisel get his snow shovel with which they might lift the dog from the street. While Eisel was gone for the shovel, Van Sickle and Halter remained in the street with the dog, Halter standing about 6 feet from the curb and Van Sickle about 2 or 3 feet therefrom. This is the relative position in which Eisel saw them as he started across the street with his shovel. Eisel and Van Sickle testified that before they first went across the street, they looked in each direction for approaching traffic and saw none. Eisel said, referring to Van Sickle and Halter, that when he left for the shovel, and when returning with it, "they weren't stooped very much, but they had their backs, or rather they had their eyes trained on the dog." However, he says, they were stooped some and had their backs toward the west, from which direction Walper came in his truck. Halter was not a witness, but Van Sickle testified that both of them, while standing in the street and waiting for Eisel to return with the shovel, looked for approaching traffic and neither saw nor heard any, and that instantly after they last looked both of them were hit by Walper's truck, Van Sickle by the "right front fender" and Halter by the front end of the truck, probably between the center and the right fender thereof.

Van Sickle was thrown "maybe 15, 20 feet" south of the curb and Halter, weighing about 200 pounds, "kind of lit on the hood, then he slid off. * * * The hood was crushed and he slid off."

"At the time when I hit," says Walper, "he was thrown in the air at least a foot or so." His entire body, as Walper saw it, was about a foot above the hood and was either carried by the truck or thrown by it some distance therefrom. Another witness testified that Halter was thrown in the air "about 5 or 6 feet."

There were sidewalks along and paralleling Monroe street at the point where Van Sickle entered it and where he stood when injured.

Without minutely detailing them, the foregoing are substantially the facts disclosed by the evidence offered and received in behalf of Van Sickle at the trial in the Court of Common Pleas, at the conclusion of which that court directed a verdict for appellee Walper. From the judgment entered thereon the appellant, Van Sickle, appeals to this court on questions of law.

Although it is argued by his counsel that there is no evidence of negligence on the part of Walper, the emphatic and real contention is that the judgment of the Court of Common Pleas is correct and should be upheld because Van Sickle was guilty of contributory negligence as a matter of law in that (1) his violation of Sections 6310-34 and 6310-36, General Code, constituted negligence *per se,* and (2) his conduct was such that irrespective of statute, he was guilty of such negligence as precludes a verdict and judgment in his favor.

Section 6310-34, General Code, provides:

"Where crosswalks or cinder paths parallel the public road or highway pedestrians shall not walk in, along or upon the vehicular traveled portion of such public road or highway, except at crossing and crosswalks, except in cases where crossings or crosswalks are an unreasonable distance apart."

Section 6310-36, General Code, provides:

"Pedestrians shall not step into or upon a public road or highway without looking in both directions to see what is approaching."

Van Sickle and Halter were where they were for a definite purpose and were not walking in, along or upon the vehicular traveled portion of Monroe street within the purview and intendment of Section 6310-34, General Code. What Van Sickle was required to do

was to exercise ordinary care, and whether he did or not was a question of fact for a jury to determine. As heretofore stated, Van Sickle testified that both Halter and himself looked for approaching cars immediately before they were hit by Walper's car and neither saw nor heard any. There could be no violation of Section 6310-36, General Code, not only because non-compliance therewith had no causal connection with Van Sickle's subsequent injury, but primarily because no one disputes the testimony of both Van Sickle and Eisel that before entering the street to go to where the dog lay, both of them looked both ways for possible approaching traffic and there was none. Although, under some circumstances, vehicular traffic, as also pedestrians, may have preferential rights in the use of a public highway, no one has the exclusive right to any part thereof.

As said in *Valentine* v. *Pavilonis,* 27 Ohio App., 26, at page 30, 160 N. E., 737:

"The duty of the plaintiff [in the instant case Van Sickle] after entering the highway is not regulated by statute, but depends upon the general principles of the common law, which require that he should exercise ordinary care for his own safety, and the amount of that care would depend upon the conditions and circumstances existing at the time and place."

If the jury were to find from the evidence adduced by appellant that Van Sickle was in some degree negligent, there would still remain the issue of proximate cause, which also is a jury question.

Viewing the record in its entirety, this court is of the opinion that the trial court erred to the prejudice of Van Sickle in its direction of a verdict and that, therefore, its judgment must be reversed and the cause remanded thereto for a new trial.

*Judgment reversed and cause remanded.*

CARPENTER and OVERMYER, JJ., concur.